UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES FIDLER,                )<br>                              )<br>           Plaintiff,     )<br>       v.                       )<br>                              )<br>CITY OF INDIANAPOLIS,    )<br>BRIAN HOFMEISTER, individually and    )<br>as a police officer for the City of    )<br>Indianapolis, BRENT HENDRICKS,    )<br>individually and as a police officer for the    )<br>City of Indianapolis, RON SANTA,    )<br>individually and as a police officer for    )<br>the City of Indianapolis,    )<br>                              )<br>           Defendants.    ) | CASE NO. 1:04-cv-1483-DFH-VSS |

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE

Plaintiff James Fidler has sued the City of Indianapolis and Indianapolis
police officers Brian Hofmeister, Brent Hendricks, and Ron Santa for the use of
force in connection with Fidler's arrest on January 25, 2003. Fidler asserts: (1)
a claim under 42 U.S.C. § 1983 that defendants violated his Fourth Amendment
rights; (2) a claim that defendants violated his rights under the Indiana
Constitution; and (3) state common law tort claims. Defendants have moved for
summary judgment on each of Fidler's claims. As explained below, factual
disputes require denial of defendants' motion with respect to the core Fourth
Amendment and battery claims, but summary judgment is granted as to other
claims.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving parties entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving parties must show there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law.  *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.   See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment for defendant in excessive force case).

*Facts for Summary Judgment*

A motion for summary judgment does not necessarily call upon the court to decide what actually happened or how the law applies to what actually happened. Such a motion may ask the court simply to assume that certain facts are true and to apply the law to those supposed facts. This is such a case; defendants have stipulated to Fidler's version of the events for the purpose of summary judgment.

On January 25, 2003 Indianapolis Police Department ("IPD") Officer Brian Hofmeister stopped Fidler for speeding as he traveled southbound on a narrow side street. Officer Hofmeister was on foot. Fidler had consumed three to four beers and had recently ingested one to two grams of cocaine. When asked for his license, Fidler told Officer Hofmeister that he did not have one. Fidler's driving license had previously been suspended several times.

Officer Hofmeister ordered Fidler out of the car, patted him down, handcuffed his hands behind his back, and ordered him to sit on the curb next to another arrested individual. Five minutes later, Officer Hofmeister informed Fidler that he was under arrest pursuant to an active warrant for violation of his probation.

Officer Hendricks arrived at the scene driving a paddy wagon. Fidler then managed to slip his right hand out of the handcuffs. He ran away with the

handcuffs still attached to his left wrist.  Fidler testified that he did not see the driver of the paddy wagon fully exit the vehicle.  Fidler ran down the street, turned through two alleys before running onto Prospect Street, passed two houses, and then lay down on a sidewalk between two houses that were just four to five feet apart.  He lay on his stomach with his head pointing north for approximately a minute and a half before hearing someone walk in his direction.

As Fidler was hiding, IPD Officer Santa heard communication over dispatch that another IPD officer was pursuing a suspect on foot, and Officer Santa arrived with a trained police dog "Bart" to assist Officer Hofmeister.  Before tracking Fidler and Hofmeister, Officer Santa gathered information from other officers at the scene.  Officer Santa informed central control that he was beginning a canine-assisted search.  He began the search with Hofmeister, who by then had returned from his foot pursuit.

Officer Santa (with Bart) and Officer Hofmeister began searching for Fidler.  Within approximately four minutes, Bart led the officers to Fidler's hiding spot between the two homes on Prospect Street.  As explained below, much of what happened next is sharply disputed.  The parties agree that Bart bit Fidler's leg, Fidler was apprehended by the officers, and Fidler received emergency medical treatment both at the scene and at Wishard Hospital for his injuries.  Additional facts and allegations are added below where relevant, keeping in mind the standard for summary judgment.

*Discussion*

I.    *Federal Section 1983 Claims*

Plaintiff seeks relief under 42 U.S.C. § 1983, which provides a cause of action against "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ."

A.    *Officer Hendricks*

Officer Hendricks seeks summary judgment because he was not sufficiently involved in any alleged violation of Fidler's rights to be held accountable under § 1983.  The court agrees.  "Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994).  The events at issue in this case involve the force used in apprehending Fidler from his hiding spot between the two homes on Prospect Street.  There is no evidence that Officer Hendricks caused or was involved in these events, and Fidler's response to defendants' motion does not contend otherwise.  The court grants defendants' motion for summary judgment as to the § 1983 claims against Officer Hendricks.

B.     *Officers Hofmeister and Santa*

Fidler concedes that Officers Santa and Hofmeister had the right to arrest him after his flight, but he contends they each used excessive force in arresting him and each failed to prevent the other from using excessive force.   The defendants dispute that the officers' actions violated Fidler's rights, and the individual defendants have invoked qualified immunity as to Fidler's constitutional claims.

Excessive force claims must be analyzed using the Fourth Amendment's "reasonableness" standard.  The "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  This right is not without limits, however.  A "police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003), citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987); see also *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (the court must look to whether the totality of the circumstances justified the seizure).

In determining whether an officer has used excessive force, the fact-finder must balance the intrusion to the individual with the government interests at stake.  This requires consideration of the severity of the crime(s) at issue, whether the suspect posed an immediate threat to the safety of others, and whether the

suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. In so doing, the court must view the circumstances "from the perspective of a reasonable officer on the scene." *Id.*

Fidler also claims the officers failed to restrain one another from violating his rights. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that excessive force was being used . . . *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The parties agree that after Officer Hofmeister had initially handcuffed Fidler and informed him that he would be arrested, Fidler fled, ran to a location on Prospect Street, and lay down between two houses. Fidler's deposition testimony of the rest of the events presents a genuine issue of material fact as to whether Officers Hofmeister and Santa used excessive force:

> I was laying there, and I heard the officer walking up on me, so I rolled over on to my back, and I put my hands up as he was standing beside me, Officer Hofmeister, and I said, "I give up." And he starts stomping on me, calling me you little bitch and this and that, other cuss words. And then the officer with the dog, Santa, he comes up, and he stands back where the dog isn't reaching me, and Officer Hofmeister stops kicking me, and Officer Hofmeister looks at the officer and motions him to let the dog get to me.
>
> He looked at him kind of weird and then went ahead and give the dog enough length to get at me, because he was on a leash. And the dog grabbed my leg and repeatedly kept biting while Officer Hofmeister continued to stomp on me, kick me, calling me, "Why are you crying now

you little bitch," and this and that and that happened for maybe approximately two minutes.

And they stopped and the dog was pulled back. And he said, "Roll over." I rolled over. I placed my hands behind my back. He recuffed me, and they drug me from there to the ambulance.

Fidler Dep. at 22-23. Fidler testified that Officer Hofmeister "stomped" on him for approximately 30 seconds before Officer Santa arrived with Bart. *Id.* at 34. He testified as a result of the officers' actions during his arrest he sustained a hiatal hernia and severe injury to his right leg. *Id.* at 23. He also testified that he lost consciousness in the ambulance on the way to the hospital. *Id.* at 36. Fidler testified that he spent a week and a half in the hospital receiving treatment, including three surgeries, for his injuries, and that his right leg is "screwed up pretty good for life." *Id.* at 23.

"Defendants do not agree with the facts Fidler alleges in his Complaint for Damages and those set forth in his deposition testimony." Def. Br. at 6. Defendants do not offer their own version of the events, however, but have accepted Fidler's account for the purposes of the summary judgment. *Id.* at 3 n.1.

Resolving all conflicts in the evidence in Fidler's favor, and viewing the evidence in the light most favorable to Fidler, as the court must on summary judgment, Fidler's deposition testimony raises genuine issues of material fact as to whether IPD Officers Hofmeister and Santa used unreasonable force in

arresting him on January 25, 2003, and as to whether each officer failed to intervene to prevent the other from violating Fidler's rights.

At the time of the arrest, the officers knew that Fidler had fled arrest, that there was a warrant for his arrest for a violation of his probation, and that he had hidden from the officers.  While these factors may weigh in favor of a finding that some force would be reasonable in effecting Fidler's arrest, Fidler testified that for approximately two minutes when he was neither resisting nor fleeing, Hofmeister kicked and stomped on him in front of Officer Santa, who commanded Bart to attack Fidler at Hofmeister's encouragement.  Viewing the evidence in accordance with the standard of review on summary judgment, Fidler has presented a triable issue as to whether Officers Santa and Hofmeister used excessive force against Fidler, or knew excessive force was being used and had a realistic opportunity to intervene to prevent the harm.

By Fidler's account he was lying on the ground, not threatening the officers, and had demonstrated his submission to the officers both by rolling over and putting his hands up and by saying "I give up."  Not surprisingly, the defendants have not cited any cases from the Seventh Circuit or any other court holding that officers in such a situation could act reasonably in kicking and stomping the subject for more than a minute or in releasing a dog trained to bite the subject.[1]

---

[1]Rather than citing proper authority to support their argument, defendants cite only *Tilson v. City of Elkhart*, 96 Fed. Appx. 413 (7th Cir. 2004).  The case is
(continued...)

Courts have generally found an issue of fact as to the reasonableness of an officers' conduct under the circumstances alleged by Fidler, where force causing serious injury was employed after suspect was subdued or had otherwise submitted to the officer's authority and was not attempting to flee or resist arrest. See, *e.g.*, *Drummond v. City of Anaheim*, 343 F.3d 1052, 1061-62 (9th Cir. 2003) (reversing summary judgment; using knees to press down on suspect's back and neck while he lay on the ground in handcuffs was objectively unreasonable); *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) (punching a passive handcuffed suspect, breaking his ribs, and pulling his hair cannot be objectively reasonable force in effecting an arrest); *Mendoza v. Block,* 27 F.3d 1357, 1362 (9th Cir. 1994) ("no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control"); *Mason v. Hamilton County*, 13 F. Supp. 2d 829, 837 n.4 (S.D. Ind. 1998) ("ordering a dog to attack a suspect

---

[1](...continued)
an unpublished order subject to Seventh Circuit Rule 53, and is clearly labeled as such.  Defendants' reliance on the case is flatly contrary to Circuit Rule 53, which provides in subsection (b)(2)(iv) that an unpublished order:

> Except to support a claim of res judicata, collateral estoppel or law of the case, shall not be used as precedent
>> (A)     in any federal court within the circuit in any written document or in oral argument; or
>> (B)     by any such court for any purpose.

In *Tilson*, the Seventh Circuit affirmed a decision by Judge Sharp, *Tilson v. City of Elkhart*, 317 F. Supp. 2d 861 (N.D. Ind. 2003).  Judge Sharp granted summary judgment for the canine officer because the undisputed facts showed he had released the dog while Mr. Tilson was still fleeing and resisting arrest.  317 F. Supp. 2d at 867.  That situation is not comparable to Fidler's testimony about being kicked, stomped, and beaten *after* submitting to authority of the officers.

-10-

who has surrendered, has been handcuffed, and is not resisting police authority would surely be unreasonable as a matter of law, if those facts could be established"); *Pastre v. Weber*, 717 F. Supp. 992, 994-95 (S.D.N.Y. 1989) (finding defendant officer's actions unreasonable where, after dangerous high-speed car chase and plaintiff's attempts to kick defendant, defendant threw him on the ground and repeatedly struck and kicked him), *aff'd mem.*, 907 F.2d 144 (2d Cir. 1990); *Taylor v. Kveton*, 684 F. Supp. 179, 181, 183 (N.D. Ill. 1988) (denying summary judgment on plaintiff's excessive force and failure to restrain claims; despite plaintiff's scuffle with one officer, in which plaintiff claimed he was defending himself, plaintiff's claims that the officers hit him once with a nightstick, kicked and stomped on him until he was semi-conscious, slammed him into the side of a squad car, and handcuffed him too tightly alleged a clear violation of the Fourth Amendment); *Luce v. Hayden*, 598 F. Supp. 1101, 1104 (D. Me.1984) (alleged order to dog to attack subject who had surrendered and was in full control of police would, if proven, "shock the conscience" and violate Constitution).[2]

Fidler's testimony is also sufficient to defeat the officers' claim of qualified immunity at the summary judgment stage.  A government official is not entitled to qualified immunity where the facts plaintiff alleges (1) reveal a constitutional

---

[2]In light of Fidler's deposition testimony and the complete absence of case law supporting defendants' theory on the excessive force claims, it is difficult to understand why the defendants even moved for summary judgment on those claims.

violation (2) according to "clearly established" law at the time, meaning that a reasonable officer facing the same circumstances the defendant faced would recognize that his actions would violate the Constitution.   *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002).[3]  As demonstrated by the decisions cited above, the force that Fidler claims the officers used in arresting him would have amounted to a constitutional violation contravening clearly established law at the time, assuming Fidler's testimony is true.   See also *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (officer not entitled to qualified immunity, plaintiff's flight notwithstanding, where plaintiff alleged that officer permitted dog to continue biting plaintiff, causing severe injury, after plaintiff was already subdued and surrounded; law was clearly established that such conduct was constitutionally unreasonable); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (dismissing appeal of denial of qualified immunity in excessive force case; issue of fact existed as to whether officers applied "wholly gratuitous" force against subdued suspect not resisting arrest).

Accordingly, no reasonable officer could have believed that the Constitution would permit an officer to (1) "stomp" on Fidler for approximately two minutes as

----

[3]The violation of an individual's rights is "clearly established" where (1) the violation is so obvious that a reasonable officer would know that what he was doing violated the Constitution, or (2) a closely analogous case establishes that the conduct is unconstitutional.  *Seibert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001); *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000) ("a plaintiff need not always cite a closely analogous case" to show a violation is "clearly established").

he lay on the ground offering his hands to be recuffed and saying "I give up"; (2) purposefully order Bart to attack Fidler after he ceased fleeing and lay on the ground; or (3) stand idly by or encourage the other officer while such actions took place.   The clear constitutional violation demonstrated by Fidler's account, accompanied by the defendants' sharp disagreement with this version of the events at issue present triable issues of fact as to whether Fidler's Fourth Amendment rights were violated and whether either officer failed to restrain the other.   Accordingly, qualified immunity is not available at this stage in the case. *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003) (false arrest case; where the parties dispute the facts at the heart of the qualified immunity issue, qualified immunity is improper because the court "cannot determine as a matter of law, what predicate facts exist to decide whether or not the [officers'] conduct clearly violated established law").   Defendants motion for summary judgment is denied as to Fidler's § 1983 excessive force and failure to restrain claims against Officers Hofmeister and Santa.

II.   *State Law Claims*

   A.   *Plaintiff's Claims Under the Indiana Constitution*

   Fidler claims that his injuries were caused during an unreasonable seizure of his person in violation of Article I, § 11 of the Indiana Constitution.   Pl. Response Br. at 8.   His complaint alleges that defendants violated his rights under Article I, § 15, which states that "No person arrested, or confined in jail, shall be

treated with unnecessary rigor," and § 16, which provides in relevant part that "Cruel and unusual punishments shall not be inflicted."  See Docket No. 1, ¶ 15.

The court need not address the merits of Fidler's state constitutional claims. The judges of this court have consistently declined to find  an implied right of action for damages under the Indiana Constitution because no such right has yet been recognized by Indiana courts.  See, *e.g.*, *Estate of O'Bryan v. Town of Sellersburg*, 2004 WL 1234215, *21 (S.D. Ind. May 20, 2004) (Hamilton, J.) ("recognizing such an implied right to sue for damages under the Indiana Constitution would work a dramatic change in Indiana law"; and "[i]f such a step is to be taken, it will need to be taken by the Indiana courts, not by a federal court whose duty it is to apply existing Indiana law"); accord, *e.g.*, *Raines v. Strittmatter*, 2004 WL 2137634, *7 (S.D. Ind. June 29, 2004) (Tinder, J.); *Willits v. Wal-Mart Stores, Inc.*, 2001 WL 1028778, *15 (S.D. Ind. July 30, 2001) (McKinney, C.J.).

Magistrate Judge Rodovich of the Northern District has certified to the Indiana Supreme Court the question whether an implied right for damages exists under Article I, § 9 of the Indiana Constitution, which protects freedom of speech. *Cantrell v. Morris*, 2005 WL 1159416, *8-*9 (N.D. Ind. May 17, 2005).  The issue is now pending before the state court.  Unless and until the Indiana Supreme Court or the Seventh Circuit direct otherwise, the court intends to adhere to its prior rulings on this question.  Defendants are entitled to summary judgment on Fidler's claims for damages under the Indiana Constitution.

B.    *Indiana Tort Claims Act*

Plaintiff also asserts state law tort claims for his physical and emotional injuries resulting from the events of his arrest.  See Docket No. 1, ¶ 24.  The Indiana Tort Claims Act ("ITCA") provides:  "A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against an employee personally."  Ind. Code § 34-13-3-5(b).    The complaint in this case clearly alleges that the officers were acting within the scope of their employment, and plaintiff has not argued otherwise.  See generally *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (identifying test for acting within scope of employment for purposes of ITCA).

Fidler may still pursue his state tort claims against the City of Indianapolis stemming from the defendants' alleged use of excessive force in apprehending and arresting him.  See Docket No. 1, ¶ 24.  Under Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest.  Ind. Code § 35-41-3-3(b).  If a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery.  *Crawford v. City of Muncie*, 655 N.E.2d 614, 622 (Ind. App. 1995); *City of South Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. App. 1979).  Indiana's excessive force standard effectively parallels the federal standard outlined above.  See *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. App. 2000).  The same genuine issues of material fact that prevent this court from granting summary judgment on plaintiff's § 1983 claims

therefore also preclude summary judgment on plaintiff's state law claims against the City of Indianapolis based on the actions of Officers Hofmeister and Santa.

The City of Indianapolis contends that it has immunity from Fidler's tort claims. Under the immunity provisions of the ITCA, a government or government employee acting within the scope of his or her employment is not liable for injuries that result from: "The adoption and enforcement of or failure to adopt or enforce a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). This law enforcement immunity applies to both negligent and intentional torts. *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. App. 1999).

The issue under Indiana law is whether the ITCA law enforcement immunity provision applies to claims for injuries resulting from the use of excessive force during a detention or arrest. The current state of Indiana law is subject to some debate. In *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1291 (Ind. 1993), the Indiana Supreme Court interpreted the provision to subject government employees to liability for losses stemming from the breach of a "private duty" but to immunize them from liability where the losses resulted from the breach of a "public duty." On the same day that *Quakenbush* was decided, the Indiana Supreme Court answered a certified question from Judge Tinder in *Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993). The *Kemezy* opinion applied the *Quakenbush* private duty/public duty framework to hold that the ITCA did not

immunize a police officer's use of excessive force because "law enforcement officers owe a private duty to refrain from using excessive force in the course of making arrests." *Id.*

Six years later, however, the Indiana Supreme Court criticized the public/private duty test in *Quakenbush*. See *Benton v. City of Oakland City*, 721 N.E.2d 224, 230 (Ind. 1999). While the opinion from *Benton* did not expressly overrule *Quakenbush*, the Supreme Court later explained that "*Benton* overruled the public/private duty test at common law." *King v. Northeast Security, Inc.*, 790 N.E.2d 474, 482 (Ind. 2003). As Judge Barker has noted, the Indiana Court of Appeals has concluded in at least one case that "the excessive force exception to ITCA immunity announced in *Kemezy* cannot be regarded as good law to the extent that it is based on the *Quakenbush* test." *Rising-Moore v. Wilson*, 2005 WL 1607187, *12 (S.D. Ind. July 7, 2005), quoting *City of Anderson v. Davis*, 743 N.E.2d 359, 366 (Ind. App. 2001). Judge Barker also pointed out that another Indiana Court of Appeals panel had found that the result in *Kemezy* has not been changed. *Rising-Moore*, 2005 WL 1607187, *12, citing *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. App. 2000).

In considering questions of state law, this court must determine the issues as it believes the Indiana Supreme Court would. See, *e.g.*, *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir.1994). The state supreme court's decision in *Kemezy* is squarely on point here, and the state court itself has not overruled it. Although

some doubt has been cast on the holding in *Kemezy*, this court cannot currently predict that the state court will overrule the result in *Kemezy*, even if it might use a different analysis in the future. One should not conclude too readily that the Indiana legislature intended to leave Indiana citizens without a remedy under state law if police officers inflict unreasonable and excessive force upon them. Under *Kemezy*, the City of Indianapolis is not immune from plaintiff's state tort claims. Accord, *Rising-Moore*, 2005 WL 1607187, *13.

V.    *Additional Abandoned Claims*

Count III of Fidler's complaint alleges that the alleged stomping and dog bite amounted to a violation of his right to due process and equal protection under the Fourteenth Amendment of the United States Constitution. Plaintiff has abandoned this claim in his response to defendants' motion for summary judgment, leaving these claims for resolution under the Fourth Amendment. Accordingly, the court grants defendants' motion for summary judgment as to Count III.

Count V of Fidler's complaint alleges that the City of Indianapolis "was negligent in training certified K-9 operators or certified assistance to K-9 operators." Docket No. 1, ¶ 21. The "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the person with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Interpreting *City of Canton*, the

Seventh Circuit has found that deliberate indifference is shown only where "the policymakers have actual or constructive notice" of a "particular omission that is likely to result in constitutional violations."  *Cornfield by Lewis v. Consolidated High School District No. 230,* 991 F.2d 1316, 1327 (7th Cir. 1993).  Defendants have submitted evidence showing that IPD canine officers and their "canine partners" undergo extensive training before and during service, and that their performance is regularly monitored by the city.  Santa Dep. at 20-29, 37-38.  Fidler has presented no evidence of the training provided by the City of Indianapolis pertaining to canine operations and no evidence pertaining to other incidents involving canine operations.  He has essentially abandoned this claim in his response brief.  Accordingly, he has failed to raise an issue of face as to his negligent training claim, and summary judgment is warranted.

VI.   *Defendants' Motion to Strike*

Instead of filing a reply brief, defendants filed a motion to strike plaintiff's evidentiary designations in opposition to summary judgment on the grounds that they were not filed with proper signatures until a day after the deadline.  Plaintiff's response was due on February 13, 2006.  That response included an electronic submission of an affidavit by Fidler with an electronic signature rather than an electronic image of an affidavit with a manuscript signature.  On February 14, 2006, plaintiff submitted an affidavit with an image of a notarized manuscript signature, as well as portions of plaintiff's and Santa's depositions and an unauthenticated document that appears to be a probable cause affidavit.

Defendants argue first that the complete submission should be stricken because it is untimely, coming a day after the response deadline.  Where the plaintiff clearly made a good faith effort to comply with the deadline, it would not be just to strike the response entirely and thus to resolve the case for having missed a deadline by one day.  This situation is not remotely comparable to the one that prompted Judge Evans to quote Dinah Washington's classic rendition of the song, "What a diff'rence a day makes . . . twenty-four little hours." *Spears v. City of Indianapolis*, 74 F.3d 153, 154 (7th Cir. 1996).  In *Spears* the Seventh Circuit affirmed Judge Tinder's decision to strike materials in opposition to summary judgment that were filed a day late after repeated extensions of time that defendants had opposed, including one that the plaintiff had promised was his "final" one.  *Id.* at 156-57.  The Seventh Circuit found that Judge Tinder did not abuse his discretion by enforcing the deadline, and it noted:  "Deadlines, in the law business, serve a useful purpose and reasonable adherence to them is to be encouraged."  *Id.* at 157.

In this case, by contrast, there had been two extensions, including one caused by a fire at the offices of plaintiff's counsel.  The defendants did not oppose the extensions.  The court's, the public's, and the parties' interests in having cases decided on the merits weigh heavily against the defendants' motion to strike.

With respect, the court also believes the defendants' counsel – the city's Office of Corporation Counsel – should be careful about what they wish for.  The

motion to strike calls to mind the proverbial reminders that the world is round and that "what goes around comes around."   If a diligent lawyer's apparently isolated one-day failure to miss a non-jurisdictional deadline triggered the litigation equivalent of the death penalty – a dismissal or default – the risk of injustice would be great.  The lawyers of the Office of Corporation Counsel manage a substantial case load, including a large volume of civil rights cases in this court against Indianapolis police officers and Marion County Sheriff's deputies.  The court is confident that there are at least a few occasions when lawyers of the Office of Corporation Counsel miss deadlines or hearings.   The court and opposing counsel have a number of tools for dealing with such situations short of dismissal or default.

Defendants' motion to strike raises a number of other specific challenges to the plaintiff's submissions, but they need not be addressed in detail.  The court's reasons for denying summary judgment in part are set forth in the evidence that defendants themselves submitted – especially pages 22 and 23 of Fidler's deposition.  The court has not relied on Fidler's affidavit.  Two points deserve comment.

First, defendants try to stretch too far the general rule against using an affidavit to contradict an earlier deposition, at least without explanation.  For example, Fidler was asked in his deposition:  "How many times did the dog bite and release?" He answered "I don't know."  Fidler Dep. at 42.  In his affidavit, he

testified that the dog bit him "multiple times." Fidler Aff. ¶ 15. There is no contradiction here, certainly as a matter of law. The deposition questioning did not even approach closing the door to testimony that the dog bit him more than once. As another example, Fidler's affidavit describes his condition as "broken and bloody" after Officer Hofmeister had kicked and stomped him. *Id.* ¶ 12. Defendants object that Fidler never testified in his deposition that he suffered from broken *bones.* Please. The affidavit uses colorful language, but there is no contradiction here.

Second, defendants appear to raise a valid objection to the unauthenticated probable cause affidavit. Documents submitted in support of and in opposition to summary judgment must be authenticated unless there is no objection on that ground. The court has not considered the document. If plaintiff seeks to use it at trial, he might consider a request for admission under Rule 36 concerning its authenticity.[4]

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 37) is GRANTED as to Fidler's claims against Officer Hendricks,  his negligent training constitutional claim against City of Indianapolis (Count V), his

---

[4]The defendants' motion to strike also sought a stay of the deadline for filing a reply brief in support of summary judgment. That request is denied because Fidler's own deposition testimony, filed with defendants' original motion, so clearly dictates the resolution of the summary judgment motion.

claims for violation of his rights under the Fourteenth Amendment of the United States Constitution (Count III), his state tort claims against Officers Santa and Hofmeister personally, and his claims under the Indiana Constitution (Count II). The motion is DENIED as to Fidler's excessive force and failure to restrain claims against Officers Santa and Hofmeister, as well as his state tort claims against the City of Indianapolis.  Defendants' motion to strike is denied.


       So ordered.

Date:  April 20, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

John O'Conner Moss, III
MOSS & MOSS
chip@mossandmosslaw.com

John O'Conner Moss, Jr.
MOSS & MOSS
jmjr@mossandmosslaw.com

Marc Josef McCarthy Moss
MOSS LAW, LLC
mmoss@mosslawllc.com

John C. Ruckelshaus
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jcr@rucklaw.com

Kelly Jean Whiteman
OFFICE OF CORPORATION COUNSEL
kjwhitem@indygov.org